NATIONAL ORG OF VET ADV v. SECRETARY OF VETERANS' AFFAIRS MR. MARTINEZ The Department of Veterans Affairs has repealed the August 2011 rule that we originally challenged in this case. It did so because the Justice Department concluded, quite correctly in our opinion, that the rule was retroactive. We think there are two issues, Your Honor. First of all, we think that the question of whether the repeal of the rule is retroactive, retroactive back to the date on which the rule was promulgated, is that we think there is significant confusion and ambiguity with respect to that. Didn't the VA just send you a letter saying they are going to make it retroactive? We understand the VA to be taking the position that the repeal is retroactive. We think that's what they're saying. If Mr. Todor and the Justice Department were to stand up and say that, and if this Court were to agree with that and put that in an opinion, we think that that would move our APA challenge. And so, hopefully, I think we can bring that part of the case to a conclusion. We have one additional wrap-up issue. But if the Justice Department and the VA say the repeal is retroactive, and if the Court puts that in an opinion and says we're going to find the case moved because the repeal is retroactive, we would be okay with that. Well, I mean, do you read the letter in any other way? I mean, we're not parsing language like we did in the last case, so... Your Honor, I'm just, I hesitate, I don't want to put words in their mouth, but they suggest that the next rule that they're going to promulgate is still undergoing administrative approval. We don't know if that's a sign that it may not be a final decision on the part of the VA to make the repeal retroactive. But we'll clarify that with the government. What's your second problem? And if I could just say one more point on that point, Your Honor. We do think that it would be appropriate to, on that basis, just to say that you're doing it because the government has conceded that it is fully retroactive. The second point, Your Honor, is this issue of whether, of what to do about the fact that the VA continued to apply the rule after March 5th. As you'll see from our briefs, they told us that they would stop applying it right away. It now appears very, very clear in the record, and the government has conceded it, that they continue to apply it to veterans after March 5th. And you want us to sanction? No, Your Honor. We're not asking for any sort of sanction. What we want to do is make sure that the veterans who are improperly harmed by their failure to comply with the commitments they made to the court, we want to make sure that those veterans have an opportunity to essentially be made whole. Which group are you talking about? Are you talking about the post-March 5th group? Yes. Why aren't you talking about the post-August 2011 group? We think that those veterans also are entitled to come forward and to try to remedy their situation. We think the post-March 5th group is in a special situation because of the fact that they are harmed, not so much by the original promulgation of an invalid rule, but by that, plus the fact that the government committed to everyone, they would stop applying it, and it was only because of that that the rule was implied to them. I don't see how they're harmed any more than the earlier ones are harmed. If the rule is either as retroactive as you're suggesting it is, it's the same circumstance as far as the veterans are concerned, isn't it? Well, we think that what essentially happened is that the government came to us and they said, we agree with you, the rule is invalid. We just, we need time in which to... We understand all that. It's slightly obnoxious, I guess, once they tell us that they're not going to apply it, and they tell you they're not going to apply it, but they continue to apply it. But the remedy is the same, is it not? If it's retroactive, it's retroactive. We think, our concern is that because... Why do you care to make that, what we're asking is, why do you care to make that 2012, March 2012 distinction? Why aren't you just saying the whole thing? We think the whole thing. We think all those veterans have settled to seek relief, but our concern is this, and I'll just put it in very practical terms. There are a lot of veterans out there who, as a result of the improper application of the rule, have had their claims go final. And the government's position, as we understand it from the letter that they sent us this week, is that the only way in which those veterans can obtain redress for this harm that they've suffered is by filing a motion for reconsideration. That motion for reconsideration really disadvantages the veteran, and we don't really understand the government's view of how they could actually prevail. But we don't know if they're disadvantaged or not, unless we look into the future. So how do we, how can we here today address something that is really speculative? We think that, Your Honor, in order to take account of the fact that these veterans were harmed, we just think the court should make clear that the VA needs to afford these veterans who were harmed, especially in the post-mortem period. But they said that they're going to do that. No, well, Your Honor, they said on March 5th that they would investigate and rectify any cases in which this happened. That's what they told us on March 5th, on, sorry, on May 3rd. No, but in the letter, in the letter that, yesterday or the day before. Right, in the letter, Your Honor, they didn't say that. In fact, they abandoned, they, earlier in May, they told us, if you give us specific cases, we will look into those cases and we will rectify them. Right, and they're now saying it's too hard to look into. They're now saying it's too hard to look into those cases. And what we're going to do is we're going to treat this like any other case, and the veteran has to file for reconsideration. But we think the veteran is disadvantaged in a number of very important ways. First of all, the veteran is not going to necessarily have noticed that the rule was improperly written. We think it's important that the VA provide notice to people who were harmed. Secondly, on a motion for reconsideration, the standard that a veteran would need to satisfy... The notice, could we do that under the right to notice provision in Section 3.103? Oh, we think that the notice that we would suggest is that the VA just send a letter to the people who were affected saying, you know, here's the situation, here's how you can obtain, you can redress. Our authority to do that, though, our authority to order them to do that, could only come in the form of a sanction. Isn't that right? I think, Your Honor, I'm not sure that you would need to formally sanction them, but we think that it would certainly be a... You made a facial challenge to the regulation. It's not an amplified challenge. That's right. We think that in the context of that facial challenge and in the context of the representations that were made to the court and to us by the VA, we think that it... And we would be surprised if the VA were to push back strongly on this, but we think that it's totally reasonable that given that they continue to apply this rule, especially in the post-March 5th period, that they should take some steps to help ensure that the veterans that were inadvertently harmed as a result, that they're able to be made whole. And I just want to emphasize a couple additional points on why the reconsideration remedy that Your Honors, first of all, the standard to obtain reconsideration is that you have to show an obvious error, an obvious error. The VA has taken the position in the past that it is not an obvious error when the Board of Veterans' Appeals applies a rule that is later held to be invalid. So if they're going to apply that standard to this case, it would seem that even if there was error, it was not obvious error, and so none of the veterans can obtain relief. Secondly, Your Honor, the VA in the past has taken the position that to show obvious error, you need to satisfy the standard that's set forth for what the VA regulations call clear and undistakable error. And that's set forth at 38 CFR 20.1403. And to show clear and undistakable error, you need to show a super high level of prejudice. You need to prove that it is absolutely clear, absolutely clear that the ultimate result of your claim would have come out differently. And you need to make that showing based on the record as it existed at the time the claim was originally decided. I understand everything you're saying, and I understand the dilemma that you have. You want to make sure that the VA lives up to its word, so to speak, and that they actually take steps that are going to give you an appropriate relief. They enacted a regulation that they later have declared to have been invalid. They've taken the extraordinary measure of making it retrospective in application. You want to make sure that they're going to do the right job. My question to you is, what authority do we have to make sure that they do a right job? We think, Your Honor, that in your inherent authority to manage the litigation and dedicate the authority of the court, that when a party comes before the court and makes a representation, the opposing party makes certain concessions that everyone agrees were explicitly conditioned on that representation. That in that circumstance, that the authority of the court would... I could see us doing that in a sanctioned scenario, but not just outside of a sanctioned scenario. You appoint a special master, or we... We don't... This panel's going to monitor? No, we think, Your Honor, we have confidence that if this court were to say to the VA, you should issue notice, and you should allow these people to essentially reopen their claims without satisfying the super high standards for prejudice and for obvious error that are in the VA regulations, we think that we would have confidence. If you said that in an opinion, we would have confidence that the VA would go forward. That's why you're limiting it to that time frame. Exactly. We recognize it's a special type of relief that is most justified with respect to... And you don't want any relief for the people who got the wrong treatment from August 2011 until March of 2012? What are you doing with those? You're throwing them over the side? Not at all, Your Honor. We would love as much relief as we can get in this case, and we would certainly love for the same requirements to apply to them, but we do recognize that they're in a slightly different situation. So what do you want to do for the first group? We think that first group would be entitled to... We would invite the court, and hopefully the VA will agree with us, that the right thing to do here would be to allow all veterans to come forward and essentially reopen their claims based on who suffered any harm as a result of this rule. We think that in any event, no matter what the court does, those veterans would have the same rights to seek reconsideration of their cases pending on appeal to advance their distinction between those veterans and the post-March 5th issue. And just to go back, Your Honor, very quickly, I just want to emphasize, in addition to the challenges of showing obvious error, the super high prejudice standards, which this court in its decision in the Cook case, and that's 318 F. 3rd 1344, this court said essentially that you could not show prejudice that satisfies clear and unmistakable error when the error that you're challenging is the failure of the veterans' department to comply with its procedural obligations to inform the veteran of evidence surrounding its claim. So we think that it would be very, very hard for veterans to obtain relief on reconsideration. Moreover, you can't appeal denial of reconsideration. That's not allowed in the veterans' rules, in the VA rules. And finally, the effective date of the benefits claim is reset if you're bringing a reconsideration motion. And so if you have a claim that you've been pursuing for 10 years, and it went final because the VA said that the VA improperly applied this rule, and then you were forced to go through the reconsideration process, and you win, at the end of the day, you only get the benefits from the moment that you filed for reconsideration, not from the 10 years that you've been legitimately seeking benefits. We'll give you three minutes for rebuttal. Mr. Toder? Mr. Toder, let's cut to the chase on this one. First of all, I want to commend the Justice Department for standing up to the VA in this case. You guys can't do it the way you did it. That was a good act by the Justice Department, rather than coming up here and defending the indefensible. Now, having said that, there's no doubt that retroactivity is not involved, because we all agree, do we not, that the VA's initial rule is invalid. Agreed, and that's what's stated in the April 18th of our notice. Exactly. So, we don't need to talk about retroactivity, because from and after April, I mean, from and after, what is it, August 2011, the VA was incorrectly dealing with the cases that came before it in the board. Correct. What do you propose we do about all those cases, and what does the government propose to be done about all the cases since then that may have been wrongly decided because of the erroneous belief by the board that its hands were tied by that new rulemaking? What we have done, and what we've described in the letter that we sent to opposing counsel on Monday, is first, if any claimant comes forward and believes that they've been treated wrongly, we forward any such request to the VA Office of General Counsel for them to investigate the list of cases that was attached to that letter. Was there effort to do that, as the court noted, in the case that they did review? If there was a decision in the case, you can see from how the board was treating the issue in the case that they did review, they didn't find one where the application of the now invalidated standards changed what happened. In many cases, they said that the Bryant standards that required the board to point out evidence was satisfied in the case anyway, but as a general matter, there's two things a claimant can do. One, the claimant can seek reconsideration under 38 CFR 20.1000. The other is to appeal to the Court of Appeals for Veterans Claims. But there would be virtually no one who could still appeal, because you said they can appeal if the time hasn't run out. Well, it's within 120 days after the board has made a decision, so in many cases, people who have had their hearing on or after August 23, 2011, their decision might not have come out yet, but it has come out in less than four months. Also, if your case has not been yet decided by the board, the claimant can say, I would like to either reconsider or have the standards applied, given that the FR notice is clarified. Let me be more clear in my question, apparently. I wasn't as clear as I should be. I don't really want to know what the veterans can do. What I want to know is, what is it that the Veterans Administration, which by law is required to be veteran-friendly, what is it the Veterans Administration can and must do at this point to correct for the fact that since August 2011, they have been mistreating the veterans whose cases, potentially mistreating the veterans whose cases came before the board? What is the Veterans Administration, under the supervision of the Justice Department, to do? Well, they have issued an FR notice saying that they're repealing the statute in terms of... They don't need to repeal the statute. The statute is void. I mean, their rule is void. That's what you meant, I think. Their rule is void. They don't need to repeal anything. We will declare the rule void. Well, you've declared the rule void, so we all know it's void. Now, what are they going to do with the individuals who came before the board since August of 2011? At this point, I'm not aware of any further affirmative action that the VA is planning to take. That can't possibly be the case. You have all these cases up there, apparently, according to the record, 60 or more since March of 2012, of veterans who came before the board and were given an erroneous determination as to their rights. Now, surely the Veterans Administration, under the supervision of the Justice Department, which recognizes the invalidity of what they did, surely you all have a program for straightening this out. What is your program? At this point, I'm not aware of any further action that is planned beyond what is described. The letter says that it's too much work for us to go back into every case because it's hard to tell sometimes whether or not there was prejudice, etc. But the letter affirmatively says we're not going to do anything else. In many cases, it would involve proving a negative, but yes. So the VA has now said, regardless of whether it's after March 5th or before, we're not going to do anything more, right? Correct. It doesn't mean that they won't decide to do so later, but at this point, we're not aware of anything. Okay. So if they're going to do something, we need to order them to do it? Well, we don't think that that is within the scope of this case in any event because under 502, the official challenge to the rule, the court's authority is to review the rule. The rule is void. We could under a theory of sanctions, correct? There's been no sanctions motion, and we don't think that there's been a call for any here because what has happened is there's been a rule applied that was not under compliance with 553. Right, but we would have the inherent authority to enforce an agreement that was made and put into a court filing. In other words, the entire basis for the extensions of time that the government died was because disagreement had been entered into, right? Even if I agree with you with respect to the period before March 5th, this court would have the inherent authority to say you can't lie to us. We're not lying to the court. Or you can't even promise us you'll do something and then fail to do it. In fairness, you're right. In your letter, you say it was a mistake. We said it was a mistake, and we said in our extension of time filing that's what we were informed by VA, and that's what we were informed. What happened was on March 5th, we moved the extension of time. And as their agent in good faith, you told us that X was going to occur. And do you agree that to the extent X didn't occur, that we would have the inherent authority to order that fact to be remedied, even if we wouldn't have the authority for the earlier period of time? Yes, but we don't think that there's been anything happening here that would be any kind of misrepresentation to the court. And the reason is we got the information that it would instruct the board not to apply the regulations. That happened, as we described in the May 3rd reply in support of our motion and as well in our letter this week. VA Office of General Counsel did inform the principal vice deputy chairman of the board not to apply. That person responded. They were to inform the board. However, because we're dealing with a regulation that is still on the books, hasn't been formally repealed, it would be helpful to have a former memorandum to make sure one didn't slip through the cracks. VA Office of General Counsel issued that memorandum on April 4th. There was a misconception in Nova's reply. We're saying it was only in response to Nova's prompting the VA that they issued that memorandum. That wasn't the case. They were working on that from March 6th onward. It took a month to- Should we be in a position then we put on an order to the clerk's office to say that no extensions of time will ever be granted to the VA despite any representation made because they can't be trusted to comply with those representations? We regret that there were errors here. It was not a matter of intent. It was a matter of there's a lot of people involved with a regulation still on the books. There was a formal memo issued. That formal memo was sent out to everyone. The informal notice went out for that. There are a lot of people involved, a lot of cases happening all over the place. We regret that there were some errors here. It was not a matter of intent. It was not a matter of not wanting to live up to representations made to the court or made to opposing counsel. Well, with all due respect to my colleague's concern for the government's failures in the past, I'm more concerned with the government's proposal for the future with regard to the cases that may have been erroneously decided against the veteran because of an illegal action by the Veterans Administration in adopting that rule and instructing the board back in 2011. I cannot imagine that we now, correct me if I'm wrong, we have the Secretary of the Veterans Affairs Department in front of us right now. That's you. I'm representing the Secretary. You're representing the Secretary. I don't know any reason why we cannot require you to do what the law requires the VA to do. The law requires under 502 that the rule be repealed, and it hasn't. No, the law requires that the board make decisions based on the applicable law as of August 2011, and they failed to do that, counsel. Now, I don't want to be difficult with you, but I think you owe us something more than simply saying, well, we're thinking about it. What is it more that you could offer us? I don't have anything further to offer in terms of what's being planned for a notice. We do know that no claimant is in the court right now. How about waiving the standard for reconsideration to obtain a rehearing? There's no claimant's claim before the court right now. But you agree it would be futile. A reconsideration would be futile given the standard. No, and the reason is that the reconsideration standard cited by opposing counsel, that's only if your case is a closed case, because under 38 CFR 20.1001, you can move for reconsideration at any time, which would include after 120 days after your board decision has happened, so your case would otherwise be final. Well, there are some of those people. Some people would fall into that category, wouldn't they? We don't know. There may be. But that doesn't mean that even those people would not be outrun. First, for the people whose case is active under 38 U.S.C. 7261, the standard is prejudicial error as explained by the Supreme Court in the Shinseki v. Sanders decision of 2009. So that's a prejudiced standard. It's not the analogous to the clear and unmistakable error standard. Also under 38 U.S.C. 503, the Secretary of Veterans Affairs has discretion to grant relief in additional cases. Third, even if your case is closed, you filed for reconsideration, nothing has been done, the Secretary doesn't take any additional action, a person can still reopen their claim, and if their claim involves new service records under 3.156, how many of these veterans are represented by full-time counsel? I don't know. But we know that there is the National Organization of Veteran Advocates here. Most of them are not. That is my understanding, yes. That is my understanding, too. And yet you want them to find their way through the sections and descriptions that you've just been making. You know, every president in my memory, including the current president, has made speeches about how grateful we are to the veterans and how much we value their service. This sure doesn't sound like the Veterans Administration has listened. What I want to know is, why can't the Veterans Administration secretary, that's you, tell us what you're going to do to correct your former illegal actions? It's not yours. I understand it's the General Counsel of the Veterans Administration. The least the General Counsel of the Veterans Administration should do is go back through every one of those records and look for any evidence of error and contact the veteran, don't you think? What else are they doing up there? All you're here to do is deal with this case, the case under 502, and we've agreed that the rule is void. If we had fought the case all the way to its conclusion and the court ruled that the rule was void after all of that, then that is the relief they would be entitled to. We've stated before it got to that point that the rule was void, but that doesn't change what the relief available in the case is. Right, can I just pin down, so you concede that the rule is void because it didn't have notice and rulemaking, which is why you're making it retroactive? Yes. Okay. And it's specifically for the failure of the notice and comment procedure under 553. In their blue brief, NOVA had raised a procedural and a substantive ground. We agree on the procedural ground in light of the Purple Heart decision of this court. We have no position on the substantive ground because we agree on the procedural ground. Is there an intent to reinstate the rule in the future? Don't know. But if they do, it would be on notice and comment. Okay. Thank you. Three very quick points, Your Honor. First of all, we just want to thank the Justice Department as well for their efforts. They've been very forthright with us, very easy to deal with throughout the course of this case. We appreciate that they're very much trying to do the right thing and in the main have committed to do the right thing as well. Secondly, Your Honor, with respect to the inherent authority or sanctions issue, we think sanctions are, a sanctions theory of relief is perfectly okay here. We also think the inherent authority is more than enough authority to fix this problem. I just want to be clear, we're not asking for money. We're just asking for the veterans who've been harmed by this to be able to essentially be made whole. But as to the bigger issue, as to everything after August 2011, when you agree we're a court of limited jurisdiction and that we would not have jurisdiction to deal with everything before March 5th, would we? I think it would be a trickier question given the way that finality ordinarily operates. I think in the context of this case, though, given the delay, frankly, and again with all respect to my colleague from the Justice Department, the delay with which the VA has approached its effort to pass this rule in fairly clear violation of this court's precedent, the delay that they saw it and they pushed off the repeal of the rule. When they repealed it, they did not take a position on retroactivity for many, many months until just this week. They've created a lot of significant uncertainty with respect to all of these cases, including the ones before March 5th, in a way that it allowed for deadlines to come and go and they've created a situation in which there are a lot of veterans out there who didn't know that they should have filed because of that confusion. You could have not agreed to the extension of time. You could have asked for expedited consideration. Your Honor, you're right. I think in retrospect, we clearly, if we had known what would have happened, we would not have agreed to the second extension. We did oppose the third extension of time for precisely this reason. We've been trying to do our best. We've also been trying to work as closely as we could to try to resolve these cases in a way that's amicable, that doesn't require this court's intervention. Just a final point, Your Honor, with respect to the reconsideration standard. I suspect that the VA may want to look more closely at what it said in the past about the standard for clear error that's required on a motion for reconsideration. Mr. Todor said that it was only in close cases. They've explicitly taken the position in an opinion letter written by the general counsel of the VA that if the VA applies a rule that's invalid, even if it's later held to be invalid, that does not satisfy the standard for reconsideration. The VA has also taken the position very clearly, both the Board of Veterans' Appeals, as recently as April 2012, and the VA general counsel itself in an opinion letter. The VA has taken the position that the obvious error standard that's required for reconsideration is the same as the clear and unmistakable error standard, which is a super, super high standard of prejudice that we think a lot of these veterans are going to be impossible. Are you handling this matter pro se? Pro bono, Your Honor. Pro bono. You know, I've spent a good part of my professional career advocating for pro bono representation, and I've handled a lot of matters on a pro bono basis while I was in private practice, and this case illustrates exactly why. Why we need to have more pro bono representation. Thank you, Your Honor. And you've done a fine job. Thank you. That means a lot, Your Honor. In that same connection, since we're speaking how we're feeling about it, one of my concerns is judicial economy. And if the VA doesn't take control of this situation, I can just see the class action suits that are going to follow or the string of suits we're going to get. Keep smiling, counsel. The string of suits we're going to be getting in this matter, and, you know, it's just silly. We've got to find some way to get the VA to take responsibility for its own wrongs. I haven't figured quite how to do that yet. Well, we agree, Your Honor, and the suggestion that I would have, just going back, is we think they should, at a minimum, provide notice to everyone and make sure that everyone who's been affected by this rule can essentially be made whole. Thank you very much, Your Honor. I want to thank both counsel for your professionalism in dealing with these issues.